J. W. BOEPPLER, Appellant, v. FRANK MENOWN, Respondent.

### April 21, 1885.

1. ASSIGNMENTS—Discretionary powers can not be delegated and do not pass by a deed of assignment for the benefit of creditors.

2. CORPORATIONS—STOCKHOLDERS—Unpaid balances due by a stockholder to the corporation on his stock pass to the assignee under a deed of assignment for the benefit of its creditors.

3. ASSESSMENT—ACTION AT LAW BY ASSIGNEE.—The assignee may maintain an action at law against all the stockholders for unpaid

balances on stock without a call or assessment having been made by the corporation or by a court of equity, where the total amount due from the stockholders is not more than sufficient to pay all debts of the corporation.

4. ACTION IN EQUITY BY ASSIGNEE.—Where the aggregate amount due from stockholders is greater than the debts of the corporation, the assignee can not maintain an action at law for such unpaid balances, unless upon a previous call or assessment by the corporation, or by a court of equity.

5. EVIDENCE.—The insolvency of some of the stockholders can not be shown in an action at law for the purpose of showing that the aggregate amount due from solvent stockholders is not more than sufficient to pay the debts of the corporation.

APPEAL from the St. Louis Circuit Court, LUBKE, J.
*Affirmed.*

M. KINEALY and J. R. KINEALY, for the appellant.

JOHN D. POPE and EBER PEACOCK, for the respondent.

THOMPSON, J., delivered the opinion of the court.

An insolvent manufacturing corporation made an assignment to the plaintiff, under the statute, for the benefit of its creditors. As such assignee, the plaintiff has brought the present action against the defendant, a stockholder in the corporation, to recover the balance remaining unpaid upon his shares of stock, alleging in general terms "that the whole amount of said unpaid balance on said stock * * * is needed to pay the debts of said corporation."

The answer is: 1. A general denial. 2. An allegation that no call for the unpaid balance sued for has been made either by the corporation or by any court. 3. "That there were and are many stockholders of said Wardwell Manufacturing Company, owing different sums on account of unpaid stock held by them in said company; that plaintiff has not sued all of said stockholders to recover balances owing by them as aforesaid; and that the amounts, if any, which should be collected from each of said stockholders can only be determined by a suit in equity." 4. An allegation which need not be considered because no question arises upon it in the present state

of the record.    To this answer a reply was filed and the cause went to trial on the issues thus made.

At the trial, the plaintiff gave evidence tending to prove the allegations of his petition, but did not prove that the aggregate amount due of unpaid stock was necessary for the payment of the debts of the corporation.    In lieu of this he offered to prove that the aggregate amount due from such of the stockholders as were solvent, was necessary for the payment of such debts; and, for this purpose, he offered evidence tending to prove that certain of the share-holders were insolvent, which evidence was excluded by the court.

At the close of the evidence the plaintiff asked the court to give the following instruction, which the court refused to give: "If the court, sitting as a jury, believe from the evidence that plaintiff is the assignee of the Wardwell Manufacturing Company; that said company was, at and prior to its assignment to said Boeppler, the plaintiff, a corporation, and the defendant was a stockholder thereof, and had not fully paid the face amount of his stock; and that the whole amount due on the stock of the solvent stockholders was less than the amount of the debts due by said Wardwell Manufacturing Company when this suit was instituted or now, and is needed to pay said debts, and that the said corporation or plaintiff, as such assignee, has no other assets out of which to pay said debts, or any part of such now remaining due, then the court shall find in favor of plaintiff against defendant for the full amount due by him on his said stock, that is, the whole amount unpaid thereon."    The court thereupon gave judgment for the plaintiff in the sum of $939.25, the same being the amount which it would be necessary for the assignee to collect from the defendant as a share-holder in order to raise a fund sufficient to pay the debts of the corporation, provided all the share-holders were solvent and should pay their respective contributions. From this judgment the defendant prosecutes no appeal, but the plaintiff appeals.

It is perceived that the questions which arise upon this

record are, whether in the state of the pleadings, the court erred in excluding evidence of the insolvency of certain of the stockholders, and subsequently, in refusing the declaration of law above quoted. Primarily, the question is whether the court erred in excluding the evidence stated; because, this evidence being out of the case, no basis was afforded for the giving of the declaration of law.

The plaintiff's positions are: 1. That under the rulings of the supreme court and of this court, the unpaid balances due by the stockholders of a corporation in respect of their shares of stock pass by a deed of assignment made by the corporation to an assignee under the statute for the benefit of its creditors. This position is unquestioned.—*Lionberger* v. *Broadway Savings Bank*, 10 Mo. App. 499; *Shockley* v. *Fisher*, 75 Mo. 498; *Eppright* v. *Nickerson*, 78 Mo. 482. 2. That the assignee may sue at law to collect these unpaid balances without the previous making of an assessment either by the corporation through its directors, or by a court of equity exercising the powers of a corporation in this regard; and that so much of the decision of this court in *Lionberger* v. *Broadway Bank* (*supra*) as holds or concedes the contrary doctrine, is overruled by the two decisions of the supreme court just cited. How far this position is correct, is the real question in the case.

It must be conceded that the two decisions of the supreme court above cited are confusing upon this point. In *Shockley* v. *Fisher* (*supra*), the question arose on a demurrer to a petition by an assignee of a corporation which contained the same allegation as the petition before us, namely, that the whole of the unpaid balance due by the stockholder who was sued, was necessary to pay the debts of the corporation. But the demurrer was not rested upon this ground, nor did the opinion of the court in holding the demurrer not well taken, advert to the question whether the assignee could sue without a previous assessment made by the corporation or by a court of equity. In the subsequent case of *Eppright* v. *Nick-*

*erson* (*supra*), the question did not directly arise. But it is well known that a strong effort was made in that case by the learned and lamented lawyer who represented the respondent in the case of *Lionberger* v. *Broadway Savings Bank* in this court to induce the supreme court to overrule the decision of this court in that case. This the supreme court refused to do, but laid down the same doctrine which we had laid down in that case, citing our decision with approval.

That doctrine was this: 1. That the unpaid balance due by a stockholder of a corporation in respect of his shares of stock passes under a deed of assignment by the corporation, whereby it conveys all its assets to an assignee for the benefit of its creditors. 2. That in such a case, the aid of a court of equity is necessary to compel the directors of the corporation to make the necessary call upon the stockholders for such balance of their unpaid stock as is required to liquidate the debts of the corporation, or else to make the necessary call itself and authorize suits for the collection of the same from the various stockholders. Indeed the object of the suit in the Broadway Bank case was to compel the directors of the corporation to make the necessary assessment, or else to have the court make it. In the opinion of the supreme court in *Eppright* v. *Nickerson* (78 Mo. at page 490), Mr. Justice Henry quotes the following language of Mr. Justice Bradley in the case of *Marsh* v. *Burroughs* (Wood 463): "When a debtor has such right [being a corporation, to collect such unpaid subscriptions] and does not choose to exercise it, equity at the instance of creditors will exercise it for him." At the end of this quotation the learned Judge cites, besides a Pennsylvania case, our decision in the Broadway Bank case. In the concluding paragraph of his opinion, the doctrine that an action at law will not lie until an assessment has been made, and that the aid of a court of equity is necessary in such a case, is fully conceded in the following language: "The case of *Grosse Isle Hotel Co.* v. *L. Auson's Exrs.* (13 Vroom (42 N. J. L.) 10) was a suit at law to recover

money alleged to be due from the testator on a subscription for capital stock of plaintiff. No assessment of this stock had been made, and it was properly held that no suit at law could be maintained, until a call was made. Until then it was not payable. The same may be said of *Chandler* v. *Siddle* (10 Nat. Bank Reg. 236); and in fact that principle underlies nearly all the cases cited by the counsel for appellant. *Hannah* v. *Moberly Bank* (67 Mo. 679) and other Missouri cases are cited to the same effect." In the later case of *Jerman* v. *Benton* (79 Mo. 148, 163), the doctrine was fully recognized in the opinion of Mr. Commissioner Martin, that where stockholders are also creditors of the corporation, the rights of all parties can only be properly adjusted and settled by a proceeding in equity.

In view of these decisions we think there is no error in the record of which the plaintiff can complain. The decisions of the supreme court above cited are capable of being reconciled upon this ground alone : that where the total amount which is due and payable from all the stockholders is not more than sufficient to pay the debts of the corporation, no previous assessment, either by the corporation or a court of equity, is necessary as a prerequisite to the bringing of an action at law by an assignee of the corporation against a stockholder for his unpaid balance ; this seems very reasonable, for in such a case no discretion is to be exercised. And, as a single creditor might, but for the assignment made by the corporation, proceed against any single stockholder under the statute, after having obtained a judgment against the corporation and having his execution returned *nulla bona*, and have execution against such stockholder for the total amount of the unpaid balance due by him to the corporation, if so much is necessary to satisfy the judgment of the creditor, it must be entirely in conformity with the policy of the statute to allow the assignee to bring actions at law for the entire amount of unpaid balance due by each stockholder when the aggregate amount due from all the stockholders, if paid, will not more than

satisfy the known debts of the corporation. In such a case the taking of an account and the consequent aid of a court of equity to that end are not at all necessary to ascertain what proportion of the unpaid balances each stockholder should be required to pay. But where, as in this case, the total amount due by the stockholders will, if collected, be much more than sufficient to pay the corporate debts, the rule recognized and proceeded upon by this court in *Lionberger* v. *Broadway Savings Bank* (*supra*), and conceded by the supreme court in *Eppright* v. *Nickerson* (*supra*), that either an assessment by the directors of the necessary amount, or an order of a court of equity as a substitute for such assessment, is necessary as a preliminary to the right to sue at law, seems to apply. Not only is there authority in other states in support of this conclusion, but on principle it is unavoidable. It is a general rule that discretionary powers cannot be delegated to another, by the agent or trustee to whom it has been committed, unless he has received with the power the authority to delegate it. The assets of a corporation to the fullest extent, pass to an assignee under a deed of assignment made under our statutes by the corporation, for the benefit of its creditors ; but no one we suppose would be so wild as to contend that any of the discretionary powers of the corporation passed to such an assignee. Nor will the law make a different contract for a subscriber to the shares of the stock of a corporation from the contract which he and the corporation have seen fit to make for themselves ; though, of course, the applicatory statute law relating to corporations, existing at the time of such contract, enters into and forms a part of it. Thus the contract of subscription in the present case may be supposed to have been entered into in view of, and to be governed by the following provision of the statute relating to corporations :

" The Board of Directors, trustees or other body of persons lawfully exercising the corporate powers of any corporation, may require the subscribers to the capital stock of the company to pay the amount by them re-

spectively subscribed, in such manner and in such install-ments as may be required by the by-laws."—Rev. Stat., sect. 738. The contract of subscription is not, therefore, an absolute promise to pay the amount subscribed, but it is a promise to pay it *sub modo*, that is, as and when called for by the directors, trustees, or other body of persons lawfully exercising the powers of the corporation, in such manner as may be required by the by-laws. The law annexes the further condition that when the corporation becomes insolvent and all the amounts remaining unpaid by stockholders upon their contracts of subscription are not more than sufficient to liquidate the corporate debts, the obligation to pay becomes absolute. Where this state of facts exists it would be a vain and useless pro-ceeding for the assignee of a corporation to ask the aid of a court of equity before suing at law. But where all of the amounts due from stockholders are more than sufficient to liquidate the corporate debts, then it would appear that some person or official authority must exer-cise the discretion which has been committed to the di-rectors or trustees by the shareholders in their contracts of subscription made under the statute above quoted; and, on principle, this discretion can not be exercised by an assignee of the corporation for the benefit of the creditors, because the directors could not delegate it to him any more than they could delegate to him the gener-eral powers with which they had been clothed, of carry-ing on the corporation. Another reason which points to the same conclusion, is this: The shareholders have elected the directors to whom they have committed this discretion. These directors have been, under the law (Rev. Stat. sect. 930), chosen from their own number The directors being necessarily shareholders, their constitu-ents have committed to them this power of calling in the capital stock which they have subscribed, upon a trust and confidence that the power will not be exercised ca-priciously or oppressively. Now, if the assignee of a corporation, not being a shareholder and not having any interest in common with those by whom the power has

been delegated, may exercise it at discretion without first taking the direction of a court of equity, great oppression may ensue in his exercise of it. There may be a case where the debts of a corporation, remaining unpaid after the exhaustion of its tangible assets, amount to but a small sum. Shall the assignee be allowed to sue any shareholder for the total amount due in respect of the shares held by him, get a judgment against him and compel him by execution to satisfy the same, merely for the purpose of paying most of it back to him? Such a proceeding would be most oppressive, and would drive the individual shareholder to invoke, for the purpose of restraining the same, the very aid of a court of equity which the assignee should have been required to call upon before bringing the suit.

If this view of the law be correct, it will appear that this action started out well enough so far as the allegations of the petition were concerned; but when the point was reached in the evidence where it appeared that a larger sum was due from the stockholders upon their unpaid balances than was necessary to liquidate the debts of the corporation, it became apparent that the assignee should first have asked the aid of the court in taking an account and ascertaining the amount which each stockholder should be called upon to pay; and, not having done this, the court committed no error prejudicial to him in limiting the amount of his recovery against this shareholder, to the amount which this shareholder would have to pay, upon the hypothesis that all the other shareholders could and would pay their respective contributions. To admit the evidence which the plaintiff offered would have changed the whole scope of the action from an action at law into a suit in equity. It would have raised a multiplicity of issues not made in the pleadings, and such as could not have been conveniently settled by the verdict of a jury, which would have required the court to withdraw the cause from a jury, if the cause had been proceeding before a jury, and send it to a referee; and the defendant might justly complain that nothing in the

petition had apprised him that such was to be the nature of the proceeding.

The judgment must be affirmed. It is so ordered. All the judges concur.